IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| X-MOBILE TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>SONY CORPORATION, SONY MOBILE COMMUNICATIONS AB, SONY ELECTRONICS INC., SONY INTERACTIVE ENTERTAINMENT AMERICA LLC, and SONY INTERACTIVE ENTERTAINMENT INC.,<br><br>Defendants. | Civil Action No. 4:17-CV-701-ALM |

**DEFENDANTS' MOTION TO TRANSFER
OR, IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE**

## I.    Introduction

The Defendants in this case are Sony Corporation ("Sony Corp.") and four of its affiliates. Two of those affiliates are U.S. companies that sell the allegedly infringing products in the United States. The other Defendants are foreign entities that do not make, use, sell, offer to sell, or import any of the accused products in this country. The U.S. Defendants do not reside in this district and do not have a regular and established place of business here, making venue in this district improper under *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514 (2017). The foreign Defendants have even fewer connections to this district, if any. As such, pursuant to 28 U.S.C. §1406, Defendants respectfully request that this Court transfer this case to the Northern District of California, where venue over all Defendants would be proper. At the very least, the claims against the U.S. Defendants should be dismissed under *TC Heartland* for improper venue.

## II.    Facts

### A.    The Parties

**The Plaintiff:**  X-Mobile Technologies LLC ("X-Mobile") is a Texas limited liability company. Dkt. #9, ¶ 1. X-Mobile came into existence on August 15, 2017, just a few weeks before the commencement of this case. *See* Ex. E. Its Certificate of Formation lists its office as being in Austin, TX and identifies two "governing persons," both of whom reside in New Jersey. *Id*. Neither the Amended Complaint nor the Certificate of Formation identifies any connection between X-Mobile and this district. Indeed, X-Mobile does not aver that it makes or sells any products anywhere, or has any facilities in this district.

**The U.S. Defendants:**  Two Defendants – Sony Interactive Entertainment America LLC ("Sony Interactive America") and Sony Electronics Inc. ("Sony Electronics", collectively with Sony Interactive America "US Defendants") – are U.S. companies that sell the allegedly

infringing products in the United States. Neither of them owns, leases or operates any place of business in this district. Waugh Decl., ¶ 8; Mattuchio Decl., ¶ 7.

Sony Interactive America is a limited liability company formed under California law (*see* Dkt. #9, ¶ 5) with its principal place of business in the Northern District of California at 2207 Bridgepointe Parkway, San Mateo, CA. Waugh Decl., ¶ 4. It imports and sells allegedly infringing PlayStation 4 products in the United States. *Id.*, ¶¶ 7, 10-11.[1]

Sony Electronics is a Delaware corporation (*see* Dkt. #9, ¶ 4) with its principal place of business in San Diego, CA. Mattuchio Decl., ¶ 3. It has an office in the Northern District of California at 1730 N. First St., San Jose, CA. *Id.*, ¶ 6, Sony Electronics sells and/or has sold allegedly infringing products in the United States, including in the Northern District of California, in a limited fashion, that is, through a Sony employee Friends and Family program, through direct sales to Sony employees, and through a Sony Rewards program. *Id.*, ¶ 4.

Sony Mobile Communications (USA) Inc. ("Sony Mobile USA") is another U.S. Sony affiliate. Although not named as a defendant in this case, Sony Mobile USA imports and sells or has sold the allegedly infringing Xperia mobile phones and tablets, and the allegedly infringing Sony Smartwatches in the United States.[2] Sony Mobile USA is a Delaware corporation with its principal place of business at the same San Mateo address in the Northern District of California as Sony Interactive America. *Id.*, ¶ 3.[3]

---

[1] Sony Interactive America is in the process of merging with Sony Interactive Entertainment LLC ("Sony Interactive"), which also is a California limited liability company located at the same address in San Mateo, CA. *Id.*, ¶¶ 1, 3-4. Sony Interactive Entertainment LLC has not been named as a Defendant in this case.

[2] Reinsch Decl., ¶¶ 4,6. The accused Smartwatches are no longer being sold in the U.S. *Id.*, ¶ 6.

[3] At least as early as November 20, 2017, Defendants informed X-Mobile that Sony Mobile USA, rather than Defendant Sony Mobile Communications AB is responsible for the allegedly infringing U.S. sales of Xperia smart phones and tablets, and Sony Smartwatches. *See* Ex. D.

These U.S. companies are the only Sony companies that sell, offer to sell, or import the allegedly infringing products in the U.S. *See* Waugh Decl., ¶¶ 10-11; Reinsch Decl., ¶¶ 4, 6.

**The Foreign Defendants:** The other three Defendants (collectively, the "Foreign Defendants") are foreign companies. None of them has an office in this district. Koike Decl., ¶ 4; Senoguchi Decl., ¶ 5; Andersson Decl., ¶ 5. The Foreign Defendants do not make, use, sell, offer to sell, or import any of the allegedly infringing products in the United States. Koike Decl., ¶ 5; Senoguchi Decl., ¶ 6; Andersson Decl., ¶ 6.

Defendant Sony Corp. is a Japanese corporation with its principal place of business in Japan. Dkt. #9, ¶ 2. It is the ultimate parent corporation of the Sony entities. Koike Decl., ¶ 3.

Defendant Sony Interactive Entertainment Inc. ("Sony Interactive (Japan)") is a Japanese corporation with its principal place of business in Japan. Dkt. #9, ¶ 6. It makes and sells PlayStation hardware and software outside the U.S. Senoguchi Decl., ¶ 4.

Defendant Sony Mobile Communications AB ("Sony Mobile (Sweden)") is a corporation organized under the laws of Sweden with its principal place of business in Sweden. Dkt. #9, ¶ 3; Andersson Decl., ¶ 3. It has taken part in the design of the accused Xperia mobile phones and tablets and Sony Smartwatches, and sells or has sold them outside the United States. *Id.*, ¶ 4.

  **B.**  **The Nature of This Action and the Allegedly Infringing Products**

X-Mobile commenced this case on October 2, 2017, asserting infringement of U.S. Patent Nos. 6,958,905, 6,262,889, and 6,690,351. The initial Complaint named Sony Corp. as the only Defendant. On October 31, 2017, X-Mobile filed a First Amended Complaint, adding the other Defendants and adding allegations of infringement of U.S. Patent No. 7,162,426.

The accused products are Sony Xperia smartphones (for the '351, '889 and '426 patents); Sony Xperia tablets (for the '351 and '889 patents); Sony Smartwatches (for the '905 patent); and PlayStation 4 game consoles (for the '426 patent). Dkt. #9, ¶¶ 12, 37, 49, 61. All the

accused products are manufactured abroad.  *See* Koike Decl., ¶ 6; Reinsch Decl., ¶ 5.  The U.S. companies discussed above are the only Sony companies that import, sell or offer to sell the accused products in the United States.  *See* Waugh Decl., ¶¶ 10-11; Reinsch Decl., ¶¶ 4, 6.  None of the Foreign Defendants make, use, sell, offer to sell, or import any of the allegedly infringing products in the U.S.

      **C.**      **X-Mobile's Venue Allegations for the U.S. Defendants**

The Amended Complaint alleges in conclusory fashion that "Sony" – defined collectively to include all five Defendants, Dkt. #9, p.1 – "has regular and established places of business in this district, at least at 2800 Central Expy., Plano, TX and 1649 W. Frankford Rd., Carrollton, TX."  *Id.*, ¶ 8.  That allegation is incorrect.  In fact, the Plano address is the location of a BEST BUY consumer electronics store, and the Carrollton address is the location of CyrusOne's Dallas Data Center.  *See* Appendix A hereto; *see also* Popovski Decl., ¶¶ 3-4.  The BEST BUY store and the CyrusOne facility are not owned, leased or operated, in whole or in part, by or for any of the Defendants.  *Id*.  The U.S. Defendants do not have a place of business in this district.  Waugh Decl., ¶ 8; Mattuchio Decl., ¶ 7.

      **D.**      **The Facts Concerning Venue**

Defendants Sony Interactive America and Sony Electronics are organized under the laws of California and Delaware, respectively.  Neither of them owns, leases or operates any facility in this district.  Neither of them has a regular and established place of business in this district.  *See* Waugh Decl., ¶¶ 4, 8; Mattuchio Decl., ¶¶ 3, 7.  Further, none of the Foreign Defendants owns, leases or operates any facility in this district.  Koike Decl., ¶ 4; Senoguchi Decl., ¶ 5; Andersson Decl., ¶ 5.  In short, none of the Defendants have a regular and established place of business in this district.

### III. Venue in This District Is Not Proper for the U.S. Defendants

Venue for domestic corporations in patent cases is governed exclusively by 28 U.S.C. § 1400(b). *TC Heartland*, 137 S. Ct. at 1518-19. Section 1400(b) states:

> Any civil action for patent infringement may be brought [1] in the judicial district where the defendant resides, or [2] where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400(b) (bracketed numbers added). Neither prong of § 1400(b) is satisfied here.

"[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 137 S. Ct. at 1517. Sony Interactive America and Sony Electronics are organized under California and Delaware law, respectively, and thus do not reside in this district. *Lites Out, LLC v. OutdoorLink, Inc.*, No. 4:17-cv-00192-ALM, 2017 WL 5068348, at *4 (E.D. Tex. Nov. 2, 2017).

Moreover, neither of the U.S. Defendants has a "regular and established place of business" in this district for purposes of § 1400(b). The Federal Circuit has explained:

> [A] regular and established place of business for purposes of patent venue must: 1) be a physical place in the district; 2) be a regular and established place of business; and 3) be a place of the defendant.

*In re Cray, Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The U.S. Defendants do not own, lease or operate any facility in this district. They simply do not have any place of business here.

The addresses listed in the Amended Complaint as "Sony" places of business in this district are the locations of a BEST BUY retail store and CyrusOne's Dallas Data Center. No Sony entity "owns or leases [either] place or exercises other attributes of possession or control over [either] place." *Cray*, 871 F.3d at 1363; *see* Waugh Decl., ¶ 8; Mattuchio Decl., ¶ 7; Koike Decl., ¶ 4; Senoguchi Decl., ¶ 5; Andersson Decl., ¶ 5.

BEST BUY retail stores are BEST BUY's place of business, not Sony's. The mere fact that BEST BUY stores may sell Sony products does not transform those stores into a "regular

and established place of business" of Sony – just as Walmart stores are Walmart's "place of business," not places of business of every company whose products Walmart sells. Any other approach would radically expand § 1400(b) to make venue proper wherever a company's products are sold. We are not aware of any case taking such an expansive approach. Indeed, no case could take it consistent with *TC Heartland* and *Cray*.

The CyrusOne data center also cannot constitute a place of business of the Sony Defendants. CyrusOne provides data, backup and cloud computing services to the public. *See* Ex. I. X-Mobile does not allege that any Sony entity uses servers at the CyrusOne facility. Moreover, the "space" that CyrusOne provides to the public is merely virtual space, and § 1400(b) "cannot be read to refer merely to virtual space or to electronic communications from one person to another." *Cray*, 871 F.3d at 1362; *see also BMC Software, Inc. v. Cherwell Software LLC*, No. 1:17-cv-01074, slip op. at 3-4 (E.D. Va. Dec. 21, 2017) (Ex. K) (holding that defendants' ownership and use of computer servers located at the physical location of a third-party do not make that location a physical place of business of the defendant).

In sum, the U.S. Defendants do not reside in this district and do not have a "regular and established place of business" here. Thus, venue in this district is improper for the U.S. Defendants.

### IV. Under 28 U.S.C. § 1406(a), This Case Should Be Transferred to the Northern District of California or Dismissed as to the U.S. Defendants

Section 1406(a) states that when a case is brought in a district where venue is improper, the court "shall dismiss, or if it be in the interests of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Under § 1406(a), the court is "require[d] . . . to either dismiss or transfer a case which was filed in the wrong venue." *Hoffman v. Burroughs Corp.*, 571 F. Supp. 545, 550 (N.D. Tex. 1982). Defendants respectfully

submit that transferring the entire case to the Northern District of California, rather than dismissal, is the appropriate remedy here.[4]

### A. This Case Could Have Been Brought in the Northern District of California

This case could have been brought in the Northern District of California. The U.S. Defendants reside and/or have regular and established places of business in that district, making jurisdiction and venue over the U.S. Defendants proper there. Further, X-Mobile's jurisdiction and venue allegations for the Foreign Defendants are equally applicable for the Northern District of California.

### B. Transfer to the Northern District of California Is "In the Interests of Justice" Under § 1406(a)

Neither the Fifth Circuit nor the Federal Circuit have articulated a standard for deciding when transfer is in the "interest of justice" under § 1406(a). However, the facts here make transfer compelling. With respect to the U.S. Defendants, the Court has a binary choice in fashioning a remedy for improper venue under § 1406(a): either dismiss or transfer. In its discretion, the Court can also transfer the Foreign Defendants. As between these alternatives, transfer of the entire case to the Northern District of California has important advantages. It would allow X-Mobile's claims to be resolved in a single case against all the Defendants, including the U.S. Defendants that actually import and sell the accused products in the United States. Transfer also would permit X-Mobile to join the additional U.S. Sony company (which has been repeatedly identified to X-Mobile) that sells accused products in the United States, *i.e.*, Sony Mobile USA, which is headquartered in the Northern District of California. The alternative

---

[4] *See Harris v. Nichols Concrete Equip. Co.*, No. 02-2671, 2002 WL 31729490, at *4(E.D. La. Dec. 2, 2002) ("It is the clear rule of the Fifth Circuit that under 28 U.S.C. §§ 1404(a) & 1406(a), a district court that lacks personal jurisdiction over a defendant may transfer the entire case to a district where the case might have been brought.").

to transferring the entire case under § 1406(a) – *i.e.*, dismissal of the claims against the U.S. Defendants – would create an anomalous situation where the only Defendants left in the case are foreign companies that do not make, use, sell, offer to sell, or import any of the allegedly infringing products in the United States. The Foreign Defendants have even less of a connection, if any, to this district than the U.S. Defendants. It is much more logical and efficient for all concerned for one case to proceed against all the Sony Defendants in a forum with proper venue, *i.e.*, the Northern District of California.

Other factors also favor transfer. None of the parties has any meaningful connection to this district. X-Mobile has no facilities in this district. Its Certificate of Formation identifies only two members, both with home addresses in New Jersey. *See* Exs. E-H. Even if X-Mobile did have some connection to this district—and it does not—X-Mobile was created as a Texas corporation just a few weeks before commencement of this case. It is a "recent, ephemeral, and a construct for litigation [that] appear[s] to exist for no other purpose than to manipulate venue." *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011). This type of connection deserves "no weight in the court's venue analysis." *Id.* at 1364 (directing a transfer of venue under § 1404). In any event, venue requirements "exist for the benefit of defendants . . . ." *Hoover Grp, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408, 1410 (Fed. Cir. 1996). Any "inconvenience and cost to plaintiff is simply irrelevant under §§ 1400(b) and 1406." *Stuebing Automatic Mach. Co. v. Gavronsky*, No. 1:16-cv-576, 2017 WL 3187049, at *5 (S.D. Ohio June 12, 2017).

The Defendants also have no ties to this district. Courts routinely grant transfer where "[n]one of the parties has any significant ties to this judicial district." *Vasudevan Software, Inc.*

*v. IBM*, No. 2:09-cv-105-TJW, 2009 WL 3784371, at *2 (E.D. Tex. Nov. 10, 2009).[5]

The fact that the allegedly infringing products are sold nationwide, including in this district, does not alter the analysis. Such sales give this district "no more or less of a meaningful connection to this case than any other venue." *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008). In analyzing transfer, interests that "could apply virtually to any judicial district" are disregarded in favor of particularized local interests. *In re: Volkswagen of America, Inc.*, 545 F.3d 304, 318 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*").

The location of witnesses also favors transfer. Witnesses with knowledge of the structure, features, operation, importation, marketing and sale of the allegedly infringing products work at the Sony offices of the U.S. Defendants and of non-party Sony Mobile USA in the Northern District of California or elsewhere in California. *See* Popovski Decl., ¶¶ 7-18.

Key non-party witnesses also live in California. The Complaint alleges that the allegedly infringing Xperia smartphones and tablets use the SnapDragon Mobile Platform, which is designed and made by non-party Qualcomm, Inc. *See* Dkt. #9, ¶¶ 12, 16, 27. Qualcomm maintains research facilities in San Diego, San Jose and Santa Clara, CA, where personnel with knowledge of the SnapDragon platform would likely be found. *See* Popovski Decl., ¶ 13. The Complaint also alleges that the allegedly infringing PlayStation 4 products or components are "based on [Advanced Micro Devices, Inc.'s] AMD's PC TrueAudio Technology." Dkt. #9, ¶¶ 16, 27. AMD is headquartered in Santa Clara, CA, where personnel with knowledge of

---

[5] *See, e.g.*, *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014); *Uniloc USA, Inc. v. Apple Inc.*, Case No. 2:17-cv-00258-JRG, slip op. at 21 (E.D. Tex. Dec. 22, 2017) (Ex. L); *Realtime Data LLC v. Barracuda Networks Inc.*, No. 6:17-cv-00120, 2017 WL 4791970, at *4-5 (E.D. Tex. Oct. 24, 2017); *Kranos IP Corp. v. Riddell, Inc.*, Civil Action No. 2:17-cv-443, 2017 U.S. WL 3704762, at *13-14(E.D. Tex. Aug. 28, 2017). All the above cases granted transfer under § 1404.

AMD's PC True Audio Technology would likely be found. *See* Popovski Decl., ¶ 11. Santa Clara and San Jose are within the Northern District of California. These third-party witnesses would be subject to subpoena in the Northern District of California because "[t]he California district courts have the power to subpoena witnesses throughout the state . . . ." *Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008); *see also Eli Lilly & Co. v. Genentech, Inc.*, No.13-CV-0919-YGR, 2013 WL 4396718, at *5, n.3 (N.D. Cal. Aug. 13, 2013) (same). None of the identifiable trial witnesses lives in this district or anywhere in Texas. Because "there are potential third party witnesses who would be subject to the subpoena power of the Northern District Court of California, . . . this factor favors transfer to the Northern District of California." *PersonalWeb Techs., LLC v. Yahoo,* No. 6:12-CV-658-LD, 2014 WL 1689046, at *6 (E.D. Tex. Feb. 12, 2014).

A chart identifying possible trial witnesses and their last known addresses is included in the accompanying Declaration of Lewis V. Popovski. "Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas" this factor "weigh[s] substantial in favor of transfer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

The location of documentary evidence also favors transfer. In patent cases, the "bulk of the relevant evidence usually comes from the accused infringer." *Id*. This case is no exception. "[T]he place where the defendant's documents are kept weighs in favor of transfer to that location." *Id*. Here, relevant documents concerning the accused products are located in the Northern District of California, and overseas, primarily in Japan. *See* Popovski Decl., ¶¶ 19-22.

In short, this case has no meaningful connection to this district. In contrast, the Northern District of California is where the entities that actually sell the allegedly infringing products have

offices and where key personnel and documents are located; it has "extensive connections with the events that give rise to this suit." *Volkswagen II*, 545 F.3d at 318. "[T]he combination of multiple parties being headquartered in or near the transferee venue with no party or witness in the plaintiff's chosen forum is an important consideration." *In re Acer America Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (ordering transfer under § 1404). "[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (ordering transfer under § 1404).

The fact that X-Mobile has also filed cases in this district against companies and products not related to Sony should not outweigh the factors favoring transfer. Those other cases involve different defendants and different accused products. They do not involve the allegedly infringing Sony products. Denying transfer would result in a split of X-Mobile's claims against the Sony entities – claims that are so interconnected that they should be resolved simultaneously. It also would lead to the absurd result that the only Defendants in this case are the Foreign Defendants that do not make, use, sell, offer to sell, or import any allegedly infringing products in the U.S., while the ones that do are dismissed. It makes sense for all of the claims against Sony companies to be resolved in a single case in the Northern District of California, where venue is proper over all the Defendants.[6] Cases that rely on the co-pendency of related cases in the

---

[6] *See Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994) ("When the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion."); *Martinez v. Angel Expl., LLC*, No. 2:12-CV-265, 2013 WL 1496954, at *5 (N.D. Tex. Apr. 11, 2013) ("There is no reason to encourage duplicative litigation by transferring [one defendant but not the other]. . . . [T]he Court will not promote delay and expense by dismissing [one defendant] alone."); *Bar T Timber v. Pac. Fibre Prods.*, No. CV-13-30-BLG-CSO, 2013 WL 5209962, at *7 (D. Mont. Sep. 13, 2013) ("[S]everance is inappropriate when the conduct of a co-defendant as to whom venue is proper is

original forum as a reason to deny transfer under § 1404 present a very different situation because in those cases venue was proper as to the moving party.[7]

Where, as here, venue is improper for key defendants, but may be proper for other defendants, the appropriate remedy under § 1406(a) is to transfer the entire case. For example, in *TNR Indus. Doors, Inc. v. Performax Grp., LLC*, No. 13-13815, 2014 WL 2800750 (E.D. Mich. June 17, 2014), venue was proper for two defendants (PerforMax and Allmark), but improper for the third defendant (Markham), who was alleged to have induced infringement by the other defendants. Rather than dividing up the case by dismissing the claims against Markham and retaining those against PerforMax and Allmark, the court concluded that "[s]evering the claims in this case would not be proper" and ordered the entire case to be transferred. *Id.*, at *5; *see also Jewell v. Music Lifeboat*, 254 F. Supp. 3d 410, 423 (E.D.N.Y. 2017) (transferring claims against corporate defendants under § 1406(a) and related claims

---

central to the issues raised by the plaintiff against those subject to transfer."); *Celsion Corp. v. Stearns Mgmt. Corp.*, No. CCB 00-1214, 2001 WL 55456, at *4 (D. Md. Jan. 18, 2001) ("Where venue is appropriate as to some defendants but not others, courts prefer a transfer to an appropriate venue over severance of the case."); *Mission Trading Co. v. Lewis*, No. 16-cv-1110-JST, 2016 WL 6679556, at *6 (N.D. Cal. Nov. 14, 2016) (transferring entire case under § 1406(a) to a district where defendants' witnesses were located where only one of the two defendants moved to transfer, reasoning that "partial transfer would result in 'the same issues [being] litigated in two different places,' as the conduct of the defendant subject to transfer is 'integrally related' to the plaintiff's claims against both defendants"); *Dokoozian Constr. LLC v. Executive Risk Specialty Ins. Co.*, No. C15-703-MJP, 2015 WL 12085859at *4 (W.D. Wash. Jul. 28, 2015) ("Even if venue is proper as to either nonmoving Defendant, courts prefer a wholesale transfer to an appropriate venue over severance of the case where venue is appropriate as to some defendants but not others."); *Alzheimer's Institute of Am. v. Comentis, Inc*. No. 09-2772-VRW, 2009 WL 10672148, at *4 (N.D. Cal. Nov. 13, 2009) (same).

[7] Even under a § 1404(a) analysis, the presence of co-pending litigation involving the same patents is not determinative. *See, e.g.*, *SecurityProfiling, LLC v. Trend Micro Am., Inc.*, No. 6:16-CV-1165-RWS-JDL, 2017 U.S. Dist. LEXIS 213530, at *16-18 (E.D. Tex. May 12, 2017) (granting transfer despite finding that judicial economy weighed against transfer); *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302-JRG, 2017 WL 4225202, at *7 (E.D. Tex. Sep. 22, 2017) (granting transfer despite copending actions involving same patents).

against individual co-founders of corporate defendants under § 1404(a)). Here, dividing up the case would be even less "proper" because the defendants here are all Sony affiliates.

Transfer to the Northern District of California would allow this case to proceed against all the Defendants and do so in a forum where venue is proper for all,[8] especially for the only Sony entities that have sold, offered to sell, and/or imported the accused products in the United States. On these facts, transfer is in the interest of justice under § 1406(a).

## V.     Transfer Is Also Appropriate Under § 1404

As discussed above, the Court should exercise its discretion and transfer the claims against the Defendants to the Northern District of California under § 1406(a). However, the claims against the Defendants can also be transferred under § 1404, so that all of X-Mobile's claims concerning the accused Sony products can be adjudicated in a single case.

Section 1404(a) authorizes transfer of an action "[f]or the convenience of parties and witnesses, in the interest of justice" to any district where the action "could have been brought." For purposes of § 1404, this case "could have been brought" in the Northern District of California because jurisdiction and venue are proper for all Defendants in that district. Moreover, the Foreign Defendants, for the limited purpose of this specific legal action, consent to venue in that district, providing a separate basis for venue there. *See In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.42 (5th Cir. 2014); *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 589 (E.D. Pa. 2015).

*Volkswagen II*, 545 F.3d at 315, provides a non-exclusive list of "private interest" and "public interest" factors that are relevant under § 1404. Those factors are discussed below.

### A.     Private Interest Factors

---

[8] For the purposes of this motion only, Sony accepts X-Mobile's jurisdiction and venue allegations as to the Foreign Defendants as establishing jurisdiction and venue in the U.S.

Relative ease of access to sources of proof:  As discussed above (at pages 9-10), witnesses who are knowledgeable about the structure, features and operation of the allegedly infringing products are in California, and relevant documents are located there.  No witnesses or documents are located in this district.  This factor weighs in favor of transfer.

Availability of compulsory process:  As discussed above (at page 9), non-party witnesses who work at Qualcomm's facilities in San Diego, San Jose, or Santa Clara, CA, or at AMD's headquarters in Santa Clara, CA, would be subject to subpoena power in the Northern District of California.  No known potential witnesses would be subject to subpoena power in this district.

Cost of attendance for willing witnesses:  "The convenience of the witnesses is probably the single most important factor in a [§ 1404] transfer analysis."  *Genentech*, 566 F.3d at 1343.  This factor favors transfer when a "substantial number of material witnesses reside in the transferee venue.  *Id.* at 1344.  Here, witnesses with knowledge of the structure, operation, marketing and sales of the allegedly infringing products live in California.  In contrast, no person likely to be a witness lives in or near this district.  *See* pages 9-11, *supra*.

Other practical problems:  This factor permits consideration of factors relating to judicial economy.  As discussed above, the Court must either dismiss or transfer the claims against the U.S. Defendants under § 1406(a) because venue for those Defendants is improper in this district under § 1400(b).  Transfer is preferable because it would allow all of X-Mobile claims against the Sony Defendants to be tried in a single case, in a district where venue is proper over all Defendants.  Transfer of the claims against the Defendants under § 1404 would facilitate that result, and would avoid piecemeal litigation against the Sony Defendants in different courts.

**B.     Public Interest Factors**

Administrative difficulties flowing from court congestion:  This factor addresses "the speed with which a case can come to trial and be resolved . . . ."  *Genentech*, 566 F.3d at 1347.

Of all the § 1404 factors, this factor appears to be the "most speculative." *Id*. The median time to trial is 23.8 months in this district, and 24.8 months in the Northern District of California. *See* Ex. J. This factor is neutral in considering transfer.

<u>Local interests in having localized interests deciding at home:</u> "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Affinity Labs of Texas v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) (quoting *In re Volkswagen AG*, 371 F.3d 201, 206 (5th Cir. 2004)). As discussed above (at page 8), this case has no meaningful connection with this district. In contrast, this case has a significant connection to the Northern District of California because the Defendants who import and sell the allegedly infringing products in the U.S. are based in or have substantial offices in that district.

<u>Familiarity with governing law, and avoidance of unnecessary problems of conflict of laws or in application of foreign law:</u> Federal patent law governs this case. Both districts are familiar with patent law. These factors are neutral.

### C. Balancing the Factors

As discussed above, venue for the U.S. Defendants is improper in this district under § 1400(b), but proper in the Northern District of California, where the U.S. Defendants have offices. Transfer to the Northern District of California is also appropriate for the Foreign Defendants, so that all of X-Mobile's claims against Defendants can be resolved in a single case.

## VI. CONCLUSION

For the reasons set forth above, this Court should transfer this case to the Northern District of California under 28 U.S.C. § 1406(a) or § 1404. At the very least, this Court should dismiss X-Mobile's claims against the U.S. Defendants under § 1406(a) for improper venue.

Respectfully submitted,

By: */s/Clyde M. Siebman*
| | |
|---|---|
| Clyde M. Siebman | Lewis V. Popovski |
| Texas Bar No. 18341600 | PATTERSON BELKNAP WEBB & TYLER LLP |
| Elizabeth S. Forrest | 1133 Avenue of the Americas |
| Texas Bar No. 24086207 | New York, NY 10036 |
| clydesiebman@siebman.com | Telephone:  (212) 336-2000 |
| elizabethforrest@siebman.com | Fax:  (212) 336-2222 |
| SIEBMAN, BURG, PHILLIPS & SMITH LLP | lpopovski@pbwt.com |
| 300 North Travis | |
| Sherman, Texas 75090 | |
| Telephone: (903) 870-0070 | |
| Fax:  (903) 870-0066 | |

*Attorneys for Defendants*

**APPENDIX A**



Excerpts from Exs. A and B.

**CERTIFICATE OF SERVICE**

    I certify that on February 1, 2018, I caused the foregoing motion to dismiss or transfer to be served on all counsel of record who have appeared in this case through the Court's CM/ECF system under Local Rule CV-5(a)(3).

                                          */s/Clyde M. Siebman*
                                          Clyde M. Siebman