**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| X-MOBILE TECHNOLOGIES LLC, | CIVIL ACTION NO. 4:17-cv-701 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| SONY CORPORATION, SONY MOBILE COMMUNICATIONS AB, SONY ELECTRONICS INC., SONY INTERACTIVE ENTERTAINMENT AMERICA LLC, and SONY INTERACTIVE ENTERTAINMENT INC., | |
| Defendants. | |

**X-MOBILE'S OPPOSITION TO SONY'S MOTION TO TRANSFER OR,**
**IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE**

## I.     INTRODUCTION

Sony argues that a Best Buy location in Plano cannot be a regular and established place of business for Sony, comparing itself to a random company selling goods at a store like Walmart (Dkt. 26 at 5-6) ("…Walmart stores are Walmart's 'place of business,' not places of business of every company whose products Walmart sells.")  What Sony does not tell the court is that mere months after shutting down 65% of Sony's standalone retail stores, Sony Electronics Inc. opened "new retail space" at the Sony Experience "shop-in-shop" inside of Best Buys across the country and in the Eastern District:



**Sony Electronics to Launch New Retail Space, 'Sony Experience at Best Buy,' in approximately 350 Stores Nationwide**

Sony Electronics - 05/01/2014

SAN DIEGO, May 1, 2014 /PRNewswire/ -- Sony Electronics announced it will be opening new home theater retail spaces at approximately 350 Best Buy locations nationwide. The 'Sony Experience at Best Buy' shop-in-shops will provide consumers with a best-in-class shopping experience through enhanced fixtures, interactive demonstration areas and dedicated, knowledgeable Sony Experience Experts.

(Ex. 1[1]).  Sony's motion omitted this critical fact while at the same time balking at the notion that a Best Buy location could be a "regular and established place of business" for Sony Electronics, Inc.  Sony's motion also omitted information regarding property that its U.S. entities own in the Eastern District of Texas, including at least $847,593 worth of property owned by Sony Interactive Entertainment America LLC at a CyrusOne data center location, and it did so while

---

[1] Exhibits are attached to the Declaration of C. Ryan Pinckney

likewise balking at the notion that the Carrollton CyrusOne data center could be a "regular and established place of business" for Sony Interactive Entertainment America LLC.  Accordingly, Sony's arguments that venue is improper for those two defendants do not include the entire picture and, in any event, fail.

Sony also argues that this case should be transferred to the Northern District of California, but Sony does not come close to meeting its "significant burden" to show that the Northern District of California is "clearly more convenient" than the Eastern District of Texas. Evaluating the convenience factors with complete information shows that judicial economy and court congestion weigh against transfer, and the remaining factors are neutral.  Sony's Motion to Transfer or, in the Alternative, to Dismiss should be denied.

## II.    PROCEDURAL HISTORY

On October 2, 2017, X-Mobile filed its Original Complaint for Patent Infringement against Sony Corporation, alleging infringement of U.S. Patent Nos. 6,690,351 ("the '351 Patent"), 6,262,889 ("the '889 Patent"), and 6,958,905 ("the '905 Patent").  (Dkt. 1, Original Complaint).  On October 31, X-Mobile filed its First Amended Complaint for Patent Infringement, adding Sony Mobile Communications AB, Sony Electronics Inc., Sony Interactive Entertainment America LLC, and Sony Interactive Entertainment Inc. (together with Sony Corporation "Sony" or "Defendants") as defendants and adding allegations of infringement of U.S. Patent No. 7,162,426 ("the '426 Patent").  (Dkt. 9, First Amended Complaint).  On February 1, Sony filed a Motion to Transfer or, in the Alternative, to Dismiss for Improper Venue, arguing that "[t]he U.S. Defendants do not reside in this district and do not have a regular and established place of business here, making venue in this district improper…" and that "[t]he foreign Defendants have even fewer connections to this district, if any."  (Dkt. 26, Motion at 1).

## III.    VENUE IS PROPER IN THIS DISTRICT

Venue is proper in this district for domestic[2] defendants Sony Electronics Inc. and Sony Interactive Entertainment America LLC because both companies have a "regular and established place of business" in this district.

### A.    GOVERNING LAW

The burden to establish improper venue on a motion to dismiss under Rule 12(b)(3) rests with the moving party. *See, e.g., Am. GNC Corp. v. ZTE Corp.*, 4:17-cv-620-ALM, 2017 WL 5157700, at *1 (E.D. Tex. Nov. 7, 2017) (affirming decision that party claiming improper venue bears the burden of proof).  This is because "[v]enue is a personal privilege that offers protection from inconvenience, [and] the burden of establishing improper venue lies with the defendant." *Soverain IP, LLC v. Apple, Inc.*, C.A. No 2:17-cv-00204-RWS-RSP, Dkt. 126 at 2-3 (E.D. Tex. July 25, 2017), citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982), cert. denied, 462 U.S. 1106 (1983).

There are three factors relevant to establishing a "regular and established place of business" under § 1400(b): "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). Under these factors, each case depends on its own facts.  *Id*. at 1362.

### B.    VENUE IS PROPER AS TO SONY ELECTRONICS INC.

Sony Electronics Inc. has a regular and established place of business in the District – its "shop-in-shop" inside a Best Buy in Plano:

---

[2] Defendants do not contend that venue is improper in this district for foreign defendants Sony Corp., Sony Interactive Entertainment Inc., and Sony Mobile Communications AB.  (Dkt. 26 at 5-6, 12, 15, and n. 8).





Sony's Experience at Best Buy

18,272 views

👍 371   👎 28   ↗ SHARE   ≡+   ...

Sony ✓
Published on May 1, 2014

SUBSCRIBE  289K

A Time lapse video of the build of a Sony Experience at Best Buy  Check out the new Sony home theater retail spaces at approximately 350 Best Buy locations nationwide.

(Ex. 2; *see also* Ex 1; Ex. 3).  Indeed, Sony's own Exhibit A, a printout of the "Store Details" page for the Best Buy at 2800 N Central Expy in Plano, confirms that the Plano Best Buy has a "Sony Experience" shop-in-shop, stating "Sony experts are ready to show you the latest TVs, sound bars and gaming experiences from Sony":



Sony Experience

Sony experts are ready to show you the latest TVs, sound bars and gaming experiences from Sony.

Learn More ❯

4

(Dkt. 26-2, Ex. A at Page 3 of 5).  And tax records confirm that Sony Electronics Inc. is the owner of:

- at least $26,915 worth of tangible commercial personal property at 2800 Central Expy, the address of the Best Buy in Plano.  (Ex. 4).

- at least $26,915 worth of tangible commercial property at 3333 Preston Rd #00200, the address of the Best Buy in Frisco.  (Ex. 12).

- at least $31,027 worth of property at 1800 S Loop 288 Ste 380, the address of the Best Buy in Denton.  (Ex. 11).

- at least $31,027 worth of property at 6060 Long Prairie Rd Ste 500, the address of the Best Buy in Flower Mound.  (Ex. 11).

- at least $26,170 worth of property at 5885 Eastex Fwy, the address of the Best Buy in Beaumont.  (Ex. 10).

Sony's motion does not acknowledge these Sony Experience "shop-in-shops" in the Plano Best Buy and in other Best Buy stores in the district).  Instead, the motion presents Sony as just another company whose products Best Buy stores sell, noting that such an approach to venue "would radically expand § 1400(b) to make venue proper wherever a company's products are sold."  (Dkt. 26 at 5-6).  But Sony is not just another company whose products are sold at Best Buy.  Rather, Sony's "shop-in-shops" at Best Buy locations are, Sony's own website admits, a "new retail space" launched by Sony and a store within a store.  (Ex. 1).

This "new retail space" was likely needed for Sony, who had recently closed a large number of Sony stores prior to "launching" the Sony Experience store within a store.  Indeed, a little over two months before announcing that it was launching a "new retail space" by opening

the Sony Experience "shop-in-shops" at Best Buy locations (Ex. 1), Sony announced that it was

closing 65% of its U.S. retail stores.  (Ex. 5).

In short, Sony has not met its burden to establish that the Plano call center is not a regular

and established place of business for Sony Electronics Inc, and its motion should be denied.

### C.      VENUE IS PROPER AS TO SONY INTERACTIVE ENTERTAINMENT AMERICA LLC

Sony Interactive Entertainment America LLC (hereinafter "SIEA") has a regular and

established place of business in the District – its Playstation servers and/or data center operations

at CyrusOne's Carrollton location, where SIEA owns and pays taxes on $847,593 worth of

"Personal Property – Equipment":

## Details for Property 668547

Values are 2017 Certified ▼

### General Information

| | |
|---|---|
| 1649 W FRANKFORD RD TX 75007 | $847,593.00 |

| | |
|---|---|
| Owner | SONY INTERACTIVE ENTERTAINMENT AMERICA, LLC🔍 - 100% |
| Owner ID | 906154 |
| Owner Mailing Address | 25 MADISON AVE FL 26 |
| | NEW YORK, NY 10010-8601 |
| Doing Business As | SONY INTERACTIVE ENTERTAINMENT AMERICA, LLC |
| Property Type | Personal Property |
| Legal Description | PERSONAL PROPERTY - EQUIPMENT @ CYRUSONE LOCATION: 1649 W FRANKFORD RD, CARROLLTON |
| Taxing Jurisdictions | C02 (CARROLLTON CITY OF) |
| | G01 (DENTON COUNTY) |
| | S09 (LEWISVILLE ISD) |

(Ex. 6, DentonCad printout).  CyrusOne offers data center space to companies that have their

own server equipment.  X-Mobile alleges (and would seek to confirm via discovery if the Court

is inclined to grant SIEA's motion) that the $847,593 worth of equipment owned by SIEA at this

location is related to its Playstation Plus service offered to owners of Playstation 4 game

consoles:



PlayStation®Plus gives you access to exclusive online features and benefits on PS4, PS3™, and
PS Vita systems, including Instant Game Collection™ and online multiplayer on PS4™ systems.

(Ex. 7; *see also* Ex. 8).  Information on a gaming forum suggests that the Playstation Networks

have "major servers in Texas."  (Ex. 14).  Through Playstation Plus, Playstation 4 users are given

access to "Online multiplayer on the PS4 System," "Online Game Save Storage," and "Free

Games to Play."  *Id*.  Server space, such as that at the CyrusOne data center in Carrollton, is

critical to providing such services.

Sony's motion devotes one meager paragraph to addressing improper venue for SIEA, arguing that "the 'space' that CyrusOne provides to the public" is "merely virtual space," and that "§ 1400(b) 'cannot be read to refer merely to virtual space or to electronic communications from one person to another,'" citing *In re Cray, Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017), and *BMC Software, Inc. v. Cherwell Software LLC*, No. 1:17-CV-01074, slip. op. at 3-4 (E.D Va. Dec. 21, 2017).  (Dkt. 26 at 6).  But neither case supports Sony's argument.  First, the "virtual space" referred to in *Cray* was only reinforcing its finding of error in the district court's holding that "a fixed *physical location* in the district is not a prerequisite to proper venue."  The equipment owned by SIEA in Carrollton (all $847,593 worth) is not in some "virtual space" – rather, is in a *fixed physical location* at 1649 W. Frankford Rd., Carrollton, TX, where SIEA maintains nearly a million dollars in actual equipment.

The *BMC Software* case does not help Sony either.  Not only did the court in *BMC Software* apply the same faulty reading of *Cray*'s "virtual space" comment (Dkt. 26-12, Ex. K at 4), but the facts there are clearly distinguishable from the facts here.  Here, SIEA owns $847,593 worth of equipment at the CyrusOne data center in Carrollton, and X-Mobile contends that the equipment is used for SIEA's Playstation Plus customers.  In *BMC Software*, on the other hand, (1) the defendant's servers were held on a single rack, (2) the defendant submitted an affidavit asserting that the servers "have never been activated for the purposes of supporting [defendant's] clients," and (3) those servers were *backup servers* not yet called into service rather than "primary" servers.  *Id*. at 4-5.

In short, SIEA has not met its burden to establish that the Carrollton data center is not a regular and established place of business for SIEA, and its motion should be denied.

### D.   ALTERNATIVELY, VENUE DISCOVERY IS WARRANTED

In the alternative, the Court should allow venue discovery into facts relevant to the domestic Sony entities' presence in the district.  This Court has held that "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."  *See Womack v. Nissan North America, Inc.*, No. 2:06-cv-479-DF, 2007 WL 5160790, at *2 (E.D. Tex. Oct. 12, 2007) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3rd Cir. 2003).  Even without discovery, whether venue is proper over the domestic Sony entities is at worst a close call.  Each entity owns nearly a million dollars worth of property in the district, and much of that property is related to Sony's retail sales.

For these reasons, if the Court has any doubt as to whether Sony has failed to prove that venue over it is improper, good cause exists to allow venue discovery to proceed.  *See, e.g., Traxell Technologies v. ALE USA Inc.*, Case No. 2:17-cv-00041-RWS-RSP (E.D. Tex. Nov. 13, 2017) (granting leave to conduct venue discovery as requested in response to motion to dismiss).

## IV.   EVEN IF VENUE WERE NOT PROPER FOR U.S. DEFENDANTS, THOSE DEFENDANTS SHOULD BE DISMISSED RATHER THAN TRANSFERRED

Sony argues that, if venue is found to be improper for both U.S. Defendants, then the court should transfer the entire case, including all five Sony defendants, to the Northern District of California rather than dismissing the two U.S. defendants.  (Dkt. 26 at 6-13).  The reasons Sony provides in support of this argument are unpersuasive.  The better course would be to dismiss any U.S. entities for which venue is improper.

Sony first argues that transfer to the Northern District of California "would allow X-Mobile's claims to be resolved in a single case against all the Defendants[,]" whereas dismissal of the U.S. Defendants "would create an anomalous situation where the only Defendants left in

the case are foreign companies that do not make, use, sell, offer to sell, or import any of the allegedly infringing products in the United States." (Dkt. 26 at 7).  Likewise, Sony also argues that where "as here, venue is improper for key defendants, but may be proper for other defendants, the appropriate remedy under § 1406(a) is to transfer the entire case."  (*Id*. at 12).[3]

The entire premise of Sony's argument – that Sony's foreign entities have little to do with Sony's patent infringement – is incorrect.  Sony's declarations and brief try to create the impression that its foreign entities have no involvement with the products at issue in this lawsuit.  But those declarations and Sony's brief are carefully worded.  Sony denies that its foreign entities import products into the United States, but import records show that Sony Interactive Entertainment Inc. shipped nearly 1.7 million pounds of "Computer Entertainment Systems" (likely Playstation systems) and accessories from China to California.  (Pinckney Decl. at ¶ 1).

Sony *does not deny* that it is involved in causing and/or directing its subsidiaries to do so, or that it delivers products to subsidiaries who then import them into the United States.  Similarly, while Sony denies that its foreign entities manufacture products in the United States, it does not deny that those entities are involved in the manufacture of the products that it knows are eventually sold nationwide.  These foreign Sony entities are not immune from answering for infringement of X-Mobile's patents simply because, rather than selling the accused products directly to Texas consumers, they instead deliver the accused products to its subsidiaries for them to sell in Texas.  And those entities are no less "key" or critical to this case than Sony's U.S. entities – instead, *each entity* is infringing X-Mobile's patents.

Also, as noted in a recent decision in this Court:

---

[3] Sony also argues that convenience factors under a § 1404 analysis suggest that transfer under § 1406 is proper.  (Dkt. 26 at 8-12).  As explained below in Section V, those factors weigh against transfer.

> A successful Motion to Dismiss or Transfer for Improper Venue *does not compel the Court to transfer a defendant to their preferred forum*.  To the contrary, dismissal is appropriate in cases, such as this one, where severing a case essentially scatters cases across the country rather than allowing the plaintiff to determine whether another venue might be more appropriate and efficient in which to pursue all or most of the defendants.

*Nichia Corp. v. Vizio, Inc.*, No. 2:16-cv-001453-JRG, slip. op. at n. 5 (E.D. Tex. Feb. 1, 2018) (emphasis added).  For these reasons, should the Court find that venue is improper for either of the U.S. Sony defendants, the Court should dismiss those defendants rather than transfer the entire case.

## V.     DEFENDANTS' MOTION TO TRANSFER UNDER § 1404 SHOULD ALSO BE DENIED

### A.     SONY BEARS THE "SIGNIFICANT BURDEN" OF SHOWING THAT THE NORTHERN DISTRICT OF CALIFORNIA WOULD BE "CLEARLY MORE CONVENIENT"

Fifth Circuit precedent requires that the transferee district be "***clearly*** more convenient":

> Although a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis, it is nonetheless taken into account as it places a ***significant*** burden on the movant to show good cause for the transfer. Thus, [the transfer] analysis directly manifests ***the importance that we must give to the plaintiff's choice.***

*In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 314 n.10 (5th Cir. 2008) (*en banc*) (emphasis added).  Sony has come nowhere close to meeting this "significant burden." Indeed, Sony fails to even *acknowledge* the Fifth Circuit's "clearly more convenient" standard for transfer in its brief.

### B.     SONY FAILED TO PROVIDE A FULL AND FAIR DISCLOSURE OF TRANSFER-RELATED FACTS

This Court has made clear that a party moving for transfer has a special burden to voluntarily disclose all material facts.  *See Rockstar Consortium US LP v. Google Inc.*, No. 2:13-

11

CV-893, 2014 WL 4748692, at *8 (E.D. Tex. Sept. 23, 2014), *reconsideration denied*, No. 2:13-CV-893, 2014 WL 6480772 (E.D. Tex. Nov. 18, 2014) ("The ***duty of candor*** imposed upon parties in this Court is ***especially important in the Motion to Transfer context***, where one side often has exclusive access to a substantial portion of information regarding the locations of relevant evidence, facilities, witnesses, and other pertinent factors.") (emphases added).

Sony violated its duty of candor on this motion.  For example, as discussed above in Sections III.B and III.C, Sony's motion and declarations did not even acknowledge, much less address, the fact that there is a "store within a store" at the Plano Best Buy (identified by address in X-Mobile's Amended Complaint) or the fact that SIEA owns $847,593 worth of equipment at the CyrusOne data center in Carrollton (also identified by address in X-Mobile's Amended Complaint).

Sony also submitted the Mattuchio Declaration (Dkt. 26-16), which falsely states at ¶ 7 that, since 2013, Sony Electronics "has not owned or leased property in the Eastern District of Texas," despite the fact that Sony Electronics Inc. owns (or leases) and pays taxes on the following within the district:

- $253,330 worth of property in Gregg County (Ex. 9)

- $230,510 worth of property in Jefferson County (Ex. 10)

- $62,054 worth of property in Denton County (Ex. 11)

- $53,830 worth of property in Collin County (Ex. 12)

Likewise, Sony submitted the Waugh Declaration (Dkt. 26-19), which falsely states at ¶ 7 that, since October 1, 2017, Sony Interactive Entertainment America "ha[s] not owned or leased property in the Eastern District of Texas," despite the fact that Sony Interactive Entertainment

America owns (or leases) and pays taxes on $847,593 worth of equipment at the CyrusOne data center in Carrollton, TX.  (Ex. 6).

These omissions and false statements show that Sony has violated its duty of candor. The Court should weigh Sony's failure to provide a full and fair disclosure of transfer-related facts against transfer.  *See Rockstar Consortium US LP*, 2014 WL 4748692, at *3, 8 (limiting effect of identified witnesses in proposed transferee forum because of movant's failure to fully disclose all relevant witnesses).

### C.    THE PRIVATE INTEREST FACTORS WEIGH AGAINST TRANSFER

#### 1.    Relative Ease Of Access To Sources Of Proof Is Neutral

Sony admits that "relevant documents concerning the accused products" are located both in California and "overseas, primarily in Japan."  (Dkt. 26 at 10).  X-Mobile alleges that Sony has employed several people in Texas, including at the "Sony Experience" store-in-stores located at a number of Texas Best Buy stores and at the CyrusOne data center in Carrollton.  These are all potential sources of evidence in Texas.

Where a large number of relevant documents will come from Japan, some will come from Texas, and others will come from states other than California, this factor is neutral.  *See, e.g.*, *TracBeam, LLC v. Apple, Inc.* ("*TracBeam*"), C.A. No. 6:14-CV-680-RWS, Dkt. No. 55 at 10 (E.D. Tex. Sept. 29, 2015) (concluding that the "nation-wide spread of relevant evidence" meant this factor weighed only slightly for transfer).

#### 2.    Availability of Compulsory Process Is Neutral

The availability of compulsory process weighs in favor of transfer when more third-party witnesses reside within the transferee venue and when the transferee venue is said to have "absolute subpoena power" over these third-party witnesses.  *Volkswagen II*, 545 F.3d at 316.

For this factor, Sony does not identify a single third-party witness by name, which is significant because this Court has repeatedly refused to give weight to any witnesses that are not specifically identified.  *Stragent, LLC v. Pioneer Elecs. (USA) Inc.*, No. 6:11-cv-278, 2013 WL 8467476 (E.D. Tex. May 8, 2013) (giving no weight to unidentified witnesses); *NovelPoint Learning v. LeapFrog Enter.*, No. 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (same); *Norman IP Holdings, LLC v. Casio Computer Co., Ltd*., 2010 WL 4238879, No. 6:09-cv-270, at *4–5 (E.D. Tex. Oct. 27, 2010) (same).  Instead, Sony describes two categories that it alleges are subject to compulsory process in the Northern District of California: (1) personnel of non-party Qualcomm, Inc. with knowledge of the SnapDragon platform, (2) personnel of non-party Advanced Micro Devices, Inc. with knowledge of AMD's PC True Audio Technology.  (Dkt. 26 at 9-10, 14).  Neither of these identified categories meets Sony's burden here.

First, Sony provides no indication of who these personnel are or where they live.  *Id*. This is reason enough to disregard Sony's argument.  *See NovelPoint Learning LLC*, 2010 WL 5068146, at *6 (finding this factor neutral where "LeapFrog has not identified any former employees in particular").  Second, Sony fails to address that, in addition to offices in California, Qualcomm also has offices in Richardson, Texas and Austin, Texas, as well as twenty-four additional offices in Arizona, Colorado, Washington D.C., Florida, Kentucky, Massachusetts, Michigan, Minnesota, North Carolina, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, and Washington.  (*See* https://www.qualcomm.com/company/facilities/offices?country=USA, visited Feb. 13, 2018). Likewise, AMD has two offices in Austin, Texas, one office in Houston, Texas, and five

additional offices in Colorado, Florida, Georgia, Massachusetts, and Washington.  (*See* https://www.amd.com/en-us/who-we-are/contact/locations).

Third, a recent transfer decision in this Court discounted "the importance of Qualcomm and its evidence."  *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG-RSP, slip. op. at 9-10 (E.D. Tex. Feb. 1, 2018).  The court explained that "Defendant does not show why any evidence in Qualcomm's Santa Clara facility is important to this case" and that "Qualcomm's name has been invoked a number of times in this Court as a third party in support of venue-change motions, yet the Court cannot recall a single instance where a Qualcomm witness has testified or where Qualcomm has produced a significant amount of relevant evidence in the capacity of a third-party."  *Id.*  On balance, where Sony has failed to specifically name who it intends to subpoena, and both districts lack power over a number of offices of the third parties identified by Sony, this factor is neutral.

### 3.     Cost of Attendance For Willing Witnesses Is Neutral

   a.     <u>Any Convenience Gained by Sony's Witnesses Is Offset by the Additional Inconvenience X-Mobile's Witnesses Would Face in Having to Appear in Two Judicial Districts</u>

This Court recently recognized that, in cases where transfer would result in multiple courts litigating the same patents, "it is likely that many willing witnesses (i.e., all of Plaintiff's witnesses and maybe also Defendants' experts) would be expected to appear in at least two [] districts."  *See Automation Middleware Solutions, Inc. v. Emerson Process Mgmt. LLLP* ("*AMS*"), C.A. No. 2:15-CV-01266-RWS, at 11 (E.D. Tex. Feb. 1, 2017).  Finding the witness convenience factor neutral, this Court noted that any cost savings resulting from transfer would be offset by the additional inconvenience many witnesses would face in having to appear in more than one judicial district.  *Id.*

This case presents the same problem.  If Sony's case is transferred, all of X-Mobile's witnesses will be inconvenienced by having to travel twice.  *See* Salmon Decl. ¶ 5.  These potential witnesses include at least X-Mobile's two members, the inventors of the patents-in-suit, the attorneys who prosecuted the patents-in-suit, and X-Mobile's technical and damages experts.  On balance, this burden outweighs any costs and inconvenience Sony's witnesses might save if this case is transferred.  The convenience and cost of attendance for willing witnesses thus is neutral.

> b.    Sony Overstates the Importance of This Factor

Sony claims that the witness convenience factor is "probably the single most important factor in a §1404 transfer analysis."  (Dkt. 26 at 14).  That is not Fifth Circuit law.  Sony improperly pulls this misrepresentative partial quote—"*probably the single most important factor in a transfer analysis*"—from the Federal Circuit's parenthetical summary of a ***New York*** district court case:

> We start with an important factor, the convenience for and cost of attendance of witnesses.  *See generally Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is *probably the single most important factor in a transfer analysis*").

*In re Genentech*, 566 F.3d at 1343 (emphasis added to show the portion Sony quotes).  In fact, the Federal Circuit opinion states that the witness convenience factor is simply "an important factor." *See id*.

This Court has never considered the witness convenience factor to be the "single most important factor" in the transfer analysis.  *See, e.g.*, *AMS*, C.A. No. 2:15-CV-01266-RWS, at 11; *Papst Licensing GMBH & Co. v. Apple, Inc.* ("*Papst Licensing*"), C.A. No. 6:15-CV-1095-RWS, at 11 (E.D. Tex. Sept. 30, 2016); *Nexus Display Techs. LLC v. Dell, Inc.* ("*Dell*"), C.A. No. 2:14-CV-762-RWS, at 10 (E.D. Tex. Aug. 25, 2015); *Nexus Display Techs. LLC v. Lenovo (United*

*States), Inc.* ("*Lenovo*"), C.A. No. 2:14-CV-763-RWS, at 9 (E.D. Tex. Aug. 25, 2015).  Sony's

assertion to the contrary is plainly incorrect.

### 4. Practical Problems, Namely Judicial Economy, Weigh Heavily Against Transfer

This Court considers judicial economy concerns to weigh heavily on the transfer analysis.

*Net Nav. Sys., LLC v. Cisco Sys., Inc.*, No. 4:11-CV-660, 2012 WL 7827544, at *5 (E.D. Tex.

Aug. 24, 2012) (J. Mazzant), *report and recommendation adopted*, No. 4:11-CV-660, 2013 WL

1309840 (E.D. Tex. Mar. 27, 2013) (citing *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345-47 (Fed.

Cir. 2010) (holding that courts may properly deny a § 1404(a) transfer based on judicial

economy even "when all of the convenience factors clearly favor transfer."); *In re Google Inc.*,

412 F. App'x 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy

plays a paramount role in trying to maintain an orderly, effective, administration of justice and

having one trial court decide all of these claims clearly furthers that objective.").

There are presently eight co-pending cases before this Court in which X-Mobile asserts

the exact same patents against defendants also in the smartphone and tablet business.  Of those

other defendants, only ZTE has requested a transfer.  Judicial economy benefits when "the same

judge handle[s] both [the suit against a transfer movant] and [] suits against other parties

involving the same patents and technology as to which there was no issue of transfer."  *In re*

*EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).  That is why this Court should apply its

case law declining transfer when co-pending related cases "where no venue issue exists" "will

remain here" regardless.  *Parthenon Unified Memory Architecture, LLC v. HTC Corp.*, No. 2:14-

CV-690, Dkt. 160, at 10 (E.D. Tex. Aug. 5, 2015).

Sony's position to the contrary ignores an obvious problem: if any of the eight co-

pending cases proceeds in the Eastern District of Texas, transfer of this case to the Northern

District of California will result in multiple courts having to address the same patents.  That is why this Court weighs judicial economy against transfer even when a *Markman* hearing is still months away.  *See Net Nav. Sys., LLC*, 2012 WL 7827544, at *5 (recognizing judicial economy concerns and denying a request to transfer over two months prior to the Markman hearing); *Net Navigation Sys., LLC v. Alcatel-Lucent USA, Inc.*, No. 4:11-CV-663, 2012 WL 13006036, at *5 (E.D. Tex. Aug. 27, 2012) (same).

Sony argues that X-Mobile's co-pending lawsuits do not weigh against transfer because those cases "involve different defendants and different accused products."  (Dkt. 26 at 11).  But the co-pending suits all involve the same allegations of infringement of the same patents (the '426 Patent, the '351 Patent, the '889 Patent, and the '905 Patent) by similar products (including, for example, smart phones, tablets, and smart watches) against defendants in similar industries.

The judicial economy implications resulting from transfer of this case to the Northern District of California, while eight co-pending related cases proceed here, weigh heavily against transfer.

### D.    THE PUBLIC INTEREST FACTORS WEIGH AGAINST TRANSFER

#### 1.    Court Congestion Weighs Against Transfer

The court congestion factor weighs against transfer as well.  The median time-to-trial in the Northern District of California is over four months longer than in the Eastern District of Texas.  (*See* Ex. 13, PWC Patent Litigation Study at 22 (median time-to-trial is 2.2 years in the Eastern District of Texas compared to 2.6 years in the Northern District of California); *see also Uniloc USA, Inc. et al v. WhatsApp Inc.*, 6-16-cv-225-RLG (E.D. Tex. Nov. 14, 2016) (denying transfer and noting that "this Court has consistently found that median time to trial in this District is several months faster than NDCA.")).  This Court has found this factor weighs against transfer

where, as here, the difference in the median time-to-trial is between four and six months.[4]  *See Round Rock Research, LLC v. Oracle Corp.*, No. 4:11-CV-332, 2011 WL 5600363, at *7 (E.D. Tex. Oct. 21, 2011); *Net Nav. Sys., LLC*, 2012 WL 7827544, at *6.  This factor thus weighs against transfer.

### 2. Local Interest Is Neutral

Sony argues that the Northern District of California has a local interest because "the Defendants who import and sell the allegedly infringing products in the U.S. are based in or have substantial offices in that district."  (Dkt. 26 at 15).  But this Court has recognized that "in patent cases, when a defendant sells products all over the country, no specific venue has a dominant interest in resolving the issue of patent infringement."  *Odom v. Microsoft Corp*., 596 F. Supp. 2d 995, 1003 (E.D. Tex. 2009) (citing *In re TS Tech,* 551 F.3d 1315, 1321 (Fed. Cir. 2008).

The reality is that "patent issues do not give rise to a local controversy or implicate local interests."  *Human Genome Scis., Inc. v. Genentech, Inc.*, 2011 WL 2911797, at *11 (D. Del. 2011).  "To characterize patent litigation as 'local' undermines the appearance of neutrality that federal courts were established to provide . . .  and flies in the face of the national (if not global) markets that are affected by the outcomes of these [patent] cases."  *Cellectis S.A. v. Precision Biosciences, Inc.*, 858 F. Supp. 2d 376, 384 (D. Del. 2012).  The local interest factor is neutral.

---

[4] Sony points to statistics involving all civil cases that show a one-month difference in median time to trial.  (Dkt. 26 at 14-15).  The PWC Patent Litigation Study (Ex. 13) offers more accurate statistics for transfer purposes here because it is limited to patent cases.  Also, following the *TC Heartland* decision, the number of patent cases filed in the Eastern District of Texas dropped significantly, and the number of patent cases filed in the Northern District of California increased.  Thus even if there were a narrowing of the gap in median time to trial numbers between these two districts, one would only expect the gap to widen again as the cases filed since *TC Heartland* approach trial.

19

### 3.      The Other Convenience Factors Are Neutral

The other *Volkswagen II* convenience factors (e.g., conflict-of-laws issues) are neutral.

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny Sony's motion to transfer or, in the

alternative, dismiss.

Dated: February 15, 2018                    Respectfully submitted,

                                            /s/ *C. Ryan Pinckney*
                                            Matthew J. Antonelli
                                            Texas Bar No. 24068432
                                            matt@ahtlawfirm.com
                                            Zachariah S. Harrington
                                            Texas Bar No. 24057886
                                            zac@ahtlawfirm.com
                                            Larry D. Thompson, Jr.
                                            Texas Bar No. 24051428
                                            larry@ahtlawfirm.com
                                            Christopher Ryan Pinckney
                                            Texas Bar No. 24067819
                                            ryan@ahtlawfirm.com
                                            Michael D. Ellis
                                            Texas Bar No. 24081586
                                            michael@ahtlawfirm.com

                                            ANTONELLI, HARRINGTON
                                            & THOMPSON LLP
                                            4306 Yoakum Blvd., Ste. 450
                                            Houston, TX 77006
                                            (713) 581-3000

                                            *Attorneys for X-Mobile Technologies LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of February 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *C. Ryan Pinckney*
C. Ryan Pinckney